UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARGARET GADSBY, FRANK MURPHY,
JOHN GARDINER, SR., RICHARD J.
BRUSSARD, JR., HOSPITAL BOUTIQUES, INC.,
JAMES TAYLOR, JODY TAYLOR, JEROME
KUTCHE, JAMES RIES, DONALD OINONEN,
CHARLES FEMMINELLA, JR., ,

                Plaintiffs,

-vs-                                                 Case No. 2:10-cv-680-FtM-99SPC

AMERICAN GOLF CORPORATION OF
CALIFORNIA, GOLF ENTERPRISES, INC.,

                Defendants.
_____

**ORDER**

This matter comes before the Court on Plaintiff's Motion to Compel Production of Documents from Defendants (Doc. #34) filed on January 20, 2012. Defendants filed their Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents from Defendants (Doc. #41) on February 6, 2012. This Motion is now ripe for review.

I. Background

This case was removed from Florida state court on November 15, 2010. Plaintiffs filed that day an Amended Complaint (Doc. #2), alleging that in the 1990s and early 2000s, the Plaintiffs were introduced to the opportunity to purchase a golf membership at The Classics at Lely Resort, Lely Resort Golf & Country Club (the "Club"). In order to become members of the Club, Plaintiffs were required to pay a deposit, ranging from $30,000 – $85,000. Plaintiffs allege that Defendants misrepresented to Plaintiffs, *inter alia*, that Plaintiffs would be entitled to a

certain percentage of their Membership Deposit upon resignation from the Club. Plaintiffs further allege that in September 2002, Plaintiffs were induced to deliver an upgrade fee of $5,500 which would entitle Plaintiffs to a reimbursement of 90% of their Membership fee at the time of resignation if they waited at least eighteen months to resign. Subsequent to the Upgrade Offer, Plaintiffs delivered written resignation notice to the Defendants but have not yet (more than six years later) received their Membership Refunds. Plaintiffs thus sue Defendants for breach of contract, fraudulent inducement, negligent representation, and violation of the Investor Protection Act and the Florida Deceptive and Unfair Trade Practices Act.

On March 31, 2011, Defendants filed an Amended Motion to Dismiss the Amended Complaint (Doc. #4). Plaintiffs filed their Memorandum in Opposition to the Motion to Dismiss (Doc. #21) on April 11, 2011. Defendants filed a Reply Memorandum (Doc. #24) on May 9, 2011. Defendants' Motion to Dismiss is still pending.

On January 6, 2011, the Plaintiffs served Defendants with Plaintiffs' First Requests for Production. On February 8, 2011, Defendants served Plaintiffs with Defendants' Responses and Objections to Plaintiffs' First Request for Production of Documents. Plaintiffs allege that the Parties' respective counsel agreed to "hold off" on discovery as the Court had not yet ruled on Defendants' Motion to Dismiss. The Defendants' claim, however, that there was no stipulation that discovery should be stayed, and points to the fact that Defendants produced to Plaintiffs documents totaling over 2,500 pages on February 28, 2011, and March 30, 2011. In October 2011, the Parties commenced the scheduling of Depositions. The first date that Plaintiffs' Counsel received to depose Defendants' corporate representative was December 6, 2011. Defendants apparently rescheduled that date to January 11, 2012. At this Deposition, Plaintiffs learned of additional documents that they claim are critical to their case and also learned of

documents that exist that were not included in Defendants' Responses and Objections. Plaintiffs allege that immediately upon learning of these documents, Plaintiffs' counsel contacted Defendants' counsel with a request to obtain those documents, but that Defendants' counsel objected to Plaintiffs' counsel's request. The Court notes that the February 2, 2012, discovery deadline imposed by the Scheduling Order (Doc. #15), has come and gone.

## II. Discovery Requests

Plaintiffs ask this Court to compel production of three additional documents of which Plaintiffs learned during the January 2012 deposition of Carole Waller, Defendants' Director of Sales. Plaintiffs contend that the documents are extremely critical in Plaintiffs' case preparation and that Plaintiffs cannot properly prepare without first receiving Defendants' thorough and complete responses.

### *A. The Resignation/Transfer/Exit List*

With this Motion, Plaintiffs first seek the "Resignation List." Plaintiffs contend that this Document was covered by Plaintiffs' Production Request number 3: "Each document in your possession, custody, or control which constitutes, reflects, refers or relates to any other communication, notice, records, notes, internal memoranda, or other documents relating to the Resignation Lists." See Doc. #34-1 at 4; Doc. #34-2 at 4. Defendants objected as follows:

> Defendant objects to this request—which seeks, *inter alia*, documents relating to documents—on the grounds that it is vague, overbroad, unduly burdensome, harassing, vexatious, violative of the privacy rights of current and former Club members, not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents that are irrelevant to any party's claim or defense.
>
> Subject to the foregoing objections, Defendants will produce documents sufficient to show that each of the Plaintiffs have been moving up the membership transfer waiting list in

>accordance with the terms of the Club Bylaws and Membership Agreements.

See Doc. #34-3 at 3.

Plaintiffs argue that the Resignation List goes to the core of Plaintiffs' claims (that there are discrepancies in the number of positions that members are moving up the list and that Defendants are not complying with the Bylaws by not adhering to the rules regarding membership refunds). Plaintiffs object to Defendants' characterization of production of the list as violative of the privacy rights of current and former Club members. Plaintiffs learned at Ms. Waller's January 17, 2012, deposition that the only piece of information that may be considered private is each member's name on the list. Apparently, Plaintiffs' counsel has suggested redacting all names other than Plaintiffs'.

In turn, Defendants allege that the portion of Plaintiffs' Motion concerning the Resignation List is moot since Defendants agreed to and have since produced the Resignation List that Plaintiffs requested. On January 19, 2012, a day prior to Plaintiffs filing their Motion, Defendants' counsel advised that he would ascertain whether Defendants could produce a current (redacted) version of the Resigned Member List. See Doc. #41-1. On January 23, 2012, Defendants' counsel confirmed by email that Defendants would produce the Resignation List. See Doc. #41-2. Defendants have provided evidence that they did indeed produce the Resignation List to Plaintiffs four days later by e-mail and Federal Express. See Doc. #41-3. Defendants offer as additional proof that Plaintiffs have subsequently deposed two witnesses since production of the Resignation List.

Thus, the portion of Plaintiffs' Motion seeking production of the Resignation List is due to be denied as moot.

### *B. Defendants' End of the Month Reports*

Plaintiffs next seek production of Defendants' End of the Month Reports that Carole Waller (Defendants' Director of Sales) testified to in her deposition on January 17, 2012. Plaintiffs contend that these reports should have been produced in response to Production Requests number 3, 4, 5, and 12. Plaintiffs' Requests and Defendants' Objections are set out in full here:

Production Request number 3: "Each document in your possession, custody, or control which constitutes, reflects, refers or relates to any other communication, notice, records, notes, internal memoranda, or other documents relating to the Resignation Lists." See Doc. #34-1 at 4; Doc. #34-2 at 4.

Defendants' Response:

> Defendant objects to this request—which seeks, *inter alia*, documents relating to documents—on the grounds that it is vague, overbroad, unduly burdensome, harassing, vexatious, violative of the privacy rights of current and former Club members, not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents that are irrelevant to any party's claim or defense.
>
> Subject to the foregoing objections, Defendants will produce documents sufficient to show that each of the Plaintiffs have been moving up the membership transfer waiting list in accordance with the terms of the Club Bylaws and Membership Agreements.

See Doc. #34-3 at 3.

Production Request number 4: "All lists of members of the Club from January 1990 to the present date." See Doc. #34-1 at 4; Doc. #34-2 at 4.

Defendants' Response:

> Defendants object to this request on the ground that it is harassing, vexatious, violative of the privacy rights of current and former

>Club members, not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents that are irrelevant to any party's claim or defense.

See Doc. #34-3 at 4.

Production Request number 5: "Each document in your possession, custody, or control that constitutes, reflects, refers or relates to the list of members in the Club from January 1990 to the present date." See Doc. #34-1 at 4; Doc. #34-2 at 4.

>Defendants' Response:
>
>>Defendants object to this request on the ground that it is harassing, vexatious, violative of the privacy rights of current and former Club members, not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents that are irrelevant to any party's claim or defense.

See Doc. #34-3 at 5.

Production Request number 12: "Each document in your possession, custody, or control which constitutes, reflects, refers or relates to any other communication, notice, records, notes, internal memoranda, or other documents relating to membership rates and/or costs from 1990 to the present date." See Doc. #34-1 at 5; Doc. #34-2 at 5.

>Defendants' Response:
>
>>Defendants object to this request—which seeks, *inter alia*, documents relating to documents relating to membership rates—on the grounds that it is vague, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents that are irrelevant to any party's claim or defense.
>>
>>Subject to the foregoing objections, Defendants will produce documents sufficient to show the contributions of the Plaintiffs and the currently prevailing membership rates.

See Doc. #34-3 at 7.

Plaintiffs argue that the Defendants' Monthly Reports provide monthly reports on the number of members by category, the sales activity for a given month, and the number of resignations for each month. This information, they contend, is necessary to determine the rate at which Defendants are required to refund memberships, and Plaintiffs will be substantially prejudiced if they are denied access to these documents. As with the Resignation List, Plaintiffs learned from the deposition testimony of Ms. Waller that the only private information contained within these reports is each member's name on the list, and again, Plaintiffs' counsel has suggested redacting all names other than Plaintiffs.

Defendants make three arguments for why Plaintiffs are not entitled to the Monthly Reports: (1) the Monthly Reports are not responsive to Plaintiffs' Production Requests; (2) Plaintiffs were not diligent in pursuing the discovery; and (3) there is no basis for permitting Plaintiffs to take this discovery beyond the discovery cut-off.

Defendants' first argument, that the Monthly Reports are not responsive to Plaintiff's Production Requests, is not well taken. The Federal Rules of Civil Procedure allow discovery of any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence. Fed. R. Civ. P. 26(b)(1). Courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Discovery requests are not only limited to the issues raised in the pleading, nor limited only to evidence that would be admissible at trial. Id. However, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Id. "Courts have long held that '[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in the shadow zones of relevancy and to explore a matter which does not presently appear

germane on the theory that it might conceivably become so.'" Henderson v. Holiday CVS, L.L.C., 2010 U.S. Dist. Lexis 80660 at *6 (S.D. Fla. Aug. 9, 2010) (quoting Food Lion, Inc. v. United Food & Commercial Workers Intern. Union, 103 F.3d 1007, 1012–13 (D.C. Cir. 1997)). The Court finds that the Monthly Reports are reasonably construed to contain the information sought by Plaintiffs' Production Requests 3, 4, 5, and 12. That the Reports are responsive to more than one request is of no object.

Defendants also argue that Plaintiffs were not diligent in pursuing discovery. Defendants note that Plaintiffs had nearly one year in which to pursue discovery and challenged Defendants' objections to Plaintiffs' Production Requests. Defendants state, contrary to Plaintiffs' assertion, that there was no stipulation of counsel that discovery should be stayed.

The Court notes at the outset, that absent an Order staying discovery from this Court, Discovery is not actually stayed, regardless of any stipulation between the Parties. Thus, the discovery cut-off date of February 2, 2012, set by the scheduling order remains the relevant deadline. To that end, the Plaintiffs' Motion to Compel, though filed significantly after their Production Requests was nevertheless filed before the Discovery deadline. It is thus timely filed. Plaintiffs filed this Motion shortly after learning new information as a result of a January 2012 deposition. Whether the delay in taking the deposition is a result of an agreement between the parties is unimportant to the Court, since it occurred well within the discovery period.

Defendants also argue that there is no basis for permitting Plaintiffs to take this discovery beyond the discovery-cut off. District courts are required to "enter a scheduling order that limits the time to . . . join other parties and to amend the pleadings . . . ." Fed.R.Civ.P. 16(b). Such orders "control the subsequent course of the action unless modified by a subsequent order," Fed.R.Civ.P. 16(e), and may be modified only "upon a showing of good cause." Fed.R.Civ.P.

16(b). This good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's note. See also Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998). The Defendants' statement that we are currently outside of the discovery cut-off is well taken, and the Court emphasizes the importance of adherence to the scheduling order. However, as discussed above, the Plaintiffs' Motion was filed prior to the discovery cut-off and is thus timely. Additionally, whether or not to grant the motion to compel is at the discretion of the trial court. Commercial Union Insurance Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984). Therefore, the Court will order that the Defendants must produce the Monthly Reports in a reasonable amount of time to permit Plaintiffs to properly prepare Plaintiffs' case.

### C. The Missing Rules

Finally, Plaintiffs seek production of the Rules and Regulations that Ms. Waller indicated that she employs in her duties as Defendants' Director of Sales (the "Missing Rules"). Plaintiff contends that this document should have been produced in response to Plaintiffs' Request for Production number 22: "Your bylaws and/or governing documents, and all amendments, addenda and supplements." See Doc. #34-1 at 6; Doc. #34-2 at 6. Defendants responded:

> Defendants object to this request on the grounds that it is vague, not reasonably calculated to lead to the discovery of admissible evidence, and calls for the production of documents that are irrelevant to any party's claim or defense.
>
> Subject to the foregoing objections, Defendants state that they will produce copies of all Club Bylaws in effect from 1990 to the present.

See Doc. #34-3 at 10.

Plaintiffs acknowledge that Defendants provided numerous copies of bylaws and rules and regulations. However, Plaintiff points to the fact that Ms. Waller was unable to identify the

current governing document that she uses to conduct her duties as Defendants' Director of Sales at her January 17, 2012, deposition. Plaintiffs state that they require the governing document that Defendants employ to operate the subject club in order to substantiate that Defendants are not acting in accordance with Defendants' governing documents and to properly prepare each claim. Plaintiffs claim that they will be substantially prejudiced if they are denied access to this document.

Defendants first argue that since Plaintiffs did not present Ms. Waller with all of the copies of the bylaws which Defendants had already provided to Plaintiffs and omitted pages from one of the documents shown to Ms. Waller, Plaintiffs' contention is flawed. Additionally, Defendants point out that Ms. Waller is the Director of Sales and thus does not have reason to use such legal documents in the ordinary course of her job.

Secondly, the Defendants argue that Plaintiffs' request is moot. Defendants' counsel has confirmed that they have produced all the different vintages of the bylaws. See Doc. #41-2. Further, in the course of her deposition, Cheryl James, the Defendants' Club Administrator, confirmed that Plaintiffs had introduced all of the bylaws and rules and regulations in Defendants' possession. She has signed an affidavit testifying as such. See Doc. #41-4. Thus, since the Defendants cannot produce what does not exist, the Court will deny Plaintiffs' Motion to the extent that it seeks Bylaws which have already been turned over to the Plaintiffs in the discovery process.

### III. A Word of Caution to the Plaintiffs

The Court takes the opportunity to warn Plaintiffs' that future failure to comply with the Local Rules may result in denial of Plaintiffs' Motions. Under the Local Rules of this District, a

movant must first confer with the opposing party to determine whether or not the requested relief is opposed. The Local Rule reads in pertinent part:

> [b]efore filing any motion in a civil case, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action, the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and *shall file with the motion a statement (1) certifying that the moving counsel has conferred with opposing counsel and (2) stating whether counsel agree on the resolution of the motion*. A certification to the effect that opposing counsel was unavailable for a conference before filing a motion is insufficient to satisfy the parties' obligation to confer. *The moving party retains the duty* to contact opposing counsel expeditiously after filing and *to supplement the motion promptly with a statement certifying whether or to what extent the parties have resolved the issue(s) presented in the motion*.

M.D. Fla. Local Rule 3.01(g) (emphasis added).

Plaintiffs failed to include the required certificate of good faith conference with Defendants' counsel and, more importantly, failed to supplement the motion with a statement certifying the extent to which the parties have resolved the issue. Though the Court waives this requirement in the instant Motion, failure to comply with local rules in the future may not be met with such leniency.

### IV. Attorney's Fees

Federal Rule of Civil Procedure 37(a)(5) provides that if a motion to compel is granted, the court shall require the party opposing the motion, its attorney, or both of them to pay the reasonable expenses incurred by the movant in making the motion, including attorney's fees, unless the court finds that the opposing party's position was substantially justified, or that other circumstances make an award of expenses unjust. Additionally, if the motion is denied, the court shall require the party filing the motion, its attorney, or both of them to pay the reasonable

expenses incurred opposing the motion, including attorney's fees, unless the motion was substantially justified or other circumstances make an award of expenses unjust.

Both Plaintiffs and Defendants have moved for attorney's fees. Turning first to the Plaintiffs' request for attorney's fees, the Court notes that where, as here, the motion to compel is granted and was caused by the failure of a party to provide responsive answers to discovery requests, the Court is required to award the fees and expenses incurred in filing the motion. Only if the Court determines that the motion was filed without the moving party having made a good faith effort to obtain the discovery without court action or if other circumstances make an award of expenses unjust, is the Court authorized to deny the request for sanctions. Here, the Court finds that the Defendants' failed to provide the Resignation List and Monthly Reports. However, Plaintiffs did not need court action to obtain the Resignation List or Bylaws, since the list was provided by Defendants prior to this Order and the Defendants have already produced the Bylaws.

By that same token, the Defendants incurred unnecessary expenses in opposing the Motion with regards to the Resignation List and Bylaws, but the Court notes that the Defendants did not produce the Resignation List and Bylaws until after Plaintiffs' counsel drafted the Motion, and that they still have not yet produced the Monthly Reports.

To that end, then, the Court finds that the circumstances of this case make an award of attorney's fees to either Party to be unjust, since neither Party comes with clean hands. The Court is authorized to deny the requests for sanctions and chooses to do so here.

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion to Compel Production of Documents from Defendants (Doc. #34) is **GRANTED in part** and **DENIED in part**.

1) Plaintiffs' Motion to Compel Production of the Monthly Reports is **GRANTED**. Defendants shall deliver Monthly Reports from 1998 to the present (with only names other than Plaintiffs' redacted to protect privacy rights) to Plaintiffs by **March 12, 2012**.

2) Plaintiffs' Motion to Compel Production of the Resignation List and the Missing Rules is **DENIED as MOOT**.

3) Plaintiffs' and Defendants' requests for attorney's fees incurred with respect to this Motion are **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>  21st  </u> day of February, 2012.

*[signature: Sheri Polster Chappell]*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record