# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

MARGARET GADSBY, FRANK
MURPHY, JOHN GARDINER, SR.,
RICHARD J. BRUSSARD, JR.,
HOSPITAL BOUTIQUES, INC.,
JAMES TAYLOR, JODY TAYLOR,
JEROME KUTCHE, JAMES RIES,
DONALD OINONEN and CHARLES
FEMMINELLA, JR.,

    Plaintiffs,

v.            Case No:   2:10-cv-680-FtM-38CM

AMERICAN GOLF
CORPORATION OF CALIFORNIA
and GOLF ENTERPRISES, INC.,

    Defendants.

_____

## <u>REPORT AND RECOMMENDATION[1]</u>

  Before the Court is Defendants' Renewed Motion for Costs and Entitlement to Attorneys' Fees ("Renewed Motion") (Doc. 121).[2]   The Renewed Motion was referred to the undersigned for a Report and Recommendation.   Doc. 123.   Defendants

---

[1] Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14)** days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

[2] Plaintiffs filed an untimely response in opposition to Defendants' renewed motion on July 16, 2014 (Doc. 124), without seeking leave of Court.   Defendants filed a Motion for Leave to File a Reply to Plaintiffs' Response in Opposition to Defendants' Renewed Motion for Costs and Entitlement to Attorneys' Fees (Doc. 125), seeking leave to file a reply or, in the alternative, requesting that the Court strike Plaintiffs' untimely response.   Upon consideration, Defendants' motion will be granted in part and denied in part.   To the extent that the motion requests that the Court strike Plaintiff's untimely response, the motion will be granted and Plaintiffs' response stricken.   In all other respects, Defendants' motion will be denied.

American Golf Corporation of California and Golf Enterprises, Inc. seek to recover $10,223.74 in costs as the prevailing parties in this case and request that the Court determine whether they are also entitled to recover attorneys' fees.[3]   For the reasons set forth herein, the Court recommends that the Renewed Motion be granted in part and denied in part as to Defendants' request for taxation of costs, and denied as to Defendants' entitlement to recover attorneys' fees.

## I.      Background and Procedural History

Plaintiffs are ten individuals and one corporation who, beginning in the late 1990s, bought memberships to The Classics at Lely Resort Golf & Country Club ("the Club"), owned and operated by Defendants.   Plaintiffs brought this action alleging violations of the Florida Securities Investor Protection Act ("FSIPA"), Fla. Stat. § 517.301 (Count I); violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* (Count II); breach of contract (Count III); fraudulent inducement (Count IV); and negligent misrepresentation (Count V).   Doc. 2.   Plaintiffs claimed that at the time they purchased their memberships Defendants made certain representations, including that a percentage of their membership fees would be returned if they resigned their memberships.   All Plaintiffs have since

---

[3] Defendants state that they incurred $353,487.00 in attorneys' fees litigating this case, excluding defending the appeal, and if the Court determines Defendants are entitled to recover attorneys' fees they will file documentation to allow the Court to establish the amount and reasonableness.   Doc. 121 at 5.   Rule 54(d)(2)(C), Federal Rules of Civil Procedure, allows the Court to "decide issues of liability for fees before receiving submissions on the value of services."

resigned from the Club, and none had received a return of the membership fee at the time the instant action was brought.

The case was removed to this Court, and Plaintiffs' Amended Complaint was filed on November 15, 2010.   Docs. 1, 2.   Defendants moved to dismiss the Amended Complaint on March 31, 2011.   Doc. 19.   By Order dated April 27, 2012, the Court dismissed the FSIPA claims (Count I) as to ten Plaintiffs, finding that they were filed outside the two-year statute of limitations.[4]   Doc. 60 at 6.   The Court also found that claims alleging FDUTPA violations (Count II), fraudulent inducement (Count IV) and negligent misrepresentation (Count V) filed by seven Plaintiffs were filed outside the four-year statute of limitations and were dismissed as to those Plaintiffs.[5]   Doc. 60 at 6-7.   As to the breach of contract claim (Count III), the Court determined that dismissal based on the statute of limitations was not appropriate at that time, because additional facts were necessary to determine whether Plaintiffs had sufficiently alleged an ongoing breach of contract claim.   *Id.* at 7.

The Court then considered the sufficiency of the claims set forth in the Amended Complaint.   As to Count I (FSIPA), the Court found that Plaintiffs failed to allege a common enterprise and the membership agreements were not investment contracts or other security within the scope of FSIPA and dismissed that count in its entirety.   *Id.* at 9-10.   As to Count II (FDUTPA), Count III (breach of contract),

---

[4] Plaintiffs Gadsby, Murphy, Brussard, Hospital Boutiques, the Taylors, Kutche, Oinonen, Ries and Femminella.   Thus, Gardiner was the only Plaintiff with a timely claim under FSIPA.

[5] Plaintiffs Gadsby, Murphy, Brussard, Hospital Boutiques, Oinonen, Ries and Femminella.

Count IV (fraudulent inducement) and Count V (negligent misrepresentation), the Court determined that the remaining Plaintiffs had sufficiently alleged facts upon which relief could be granted and denied the motion to dismiss.

Defendants moved for summary judgment on March 2, 2012 (Doc. 44), arguing that Plaintiffs' breach of contract claims were inadequate because the terms of the agreements were clear and unambiguous, and there was no breach; Plaintiffs' fraud and negligent misrepresentation claims were inadequate because they could not show reliance on alleged misrepresentations or causal connections between any misrepresentation and the damages allegedly suffered by Plaintiffs; the Club memberships were not securities as a matter of Florida law; and Plaintiff's allegations, even if true, did not state a claim under FDUTPA.   The Honorable Paul A. Magnuson held a hearing on the motion for summary judgment on January 11, 2013.   Docs. 93, 104.   On January 17, 2013, the Court granted Defendants' Motion for Summary Judgment and dismissed Plaintiffs' Amended Complaint with prejudice.   Doc. 94.

The Court determined that summary judgment was warranted based on the statute of limitations as to the FDUTPA claims of Plaintiffs Kutche and the Taylors because, although the Court previously found their claims were timely, that determination was based upon the Amended Complaint, which alleged that those Plaintiffs resigned their memberships in 2007.   Additional documentation showed Plaintiffs Kutche and the Taylors actually resigned their memberships in 2004, rendering their FDUTPA and fraud claims untimely.   Doc. 94 at 4.   The Court also

determined that Plaintiffs' breach of contract claim failed because they could not establish either that a contract had been breached since none of the named Plaintiffs had reached the top of the list and therefore none were eligible for a refund, or that they were damaged by the alleged breaches. *Id.* at 4-7.

As to Plaintiff Gardiner, the Court determined that his FDUTPA claim was inadequate because he failed to establish any unfair or deceptive conduct that rose to the level required to find a FDUTPA violation. *Id.* at 9. The Court also found that Gardiner failed to establish that he was fraudulently induced to enter into his agreement with the Club or that the Club negligently misrepresented the membership terms, or that there was any reliance on a false representation. Accordingly, the Amended Complaint was dismissed with prejudice, and Judgment was entered in favor of Defendants on January 18, 2013. Doc. 95. Defendants filed a Motion for Costs and Entitlement to Attorneys' Fees on January 30, 2013 (Doc. 96), which was denied without prejudice in light of five of the original eleven Plaintiffs filing a Notice of Appeal on February 14, 2013 (Doc. 98). *See* Doc. 99.

The Eleventh Circuit affirmed the grant of summary judgment by Order dated February 11, 2014 (Doc. 118), and the Mandate was issued on March 17, 2014 (Doc. 119). In the opinion affirming summary judgment, the Eleventh Circuit noted that the appellants' "exclusive use" allegations were not properly before that court because they were raised for the first time in Plaintiffs' response to the motion for summary judgment and that Plaintiffs had abandoned their fraudulent inducement claim.

The court also found that other alleged promises, such as the promise to construct a hotel or guarantee of 81 holes of golf, are not found in the purchase contract, Bylaws or upgrade offer and, even if oral promises were made, the Bylaws' "Entire Agreement" clause governed.   Finally, the court of appeals determined that Plaintiffs had not raised a genuine issue of fact regarding whether they were entitled to refunds because none had yet reached the top of the transfer list.   To the extent Plaintiffs argued they were entitled to injunctive relief, the court stated they failed to pursue this argument at the summary judgment stage, thus the court declined to address it for the first time on appeal.   On March 19, 2014, Defendants filed the Renewed Motion.

## II.    Discussion

Defendants allege that as the prevailing party in this action they are entitled to recover certain costs and that they are entitled to attorneys' fees pursuant to the Club Bylaws sued upon in this action and attached to Plaintiff's Amended Complaint (Doc. 2-1 at 4-28).   Defendants' entitlement to attorneys' fees and costs are addressed separately.

### a.  Attorneys' fees

Generally, parties to a lawsuit each bear their own attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975).   Rule 54, Federal Rules of Civil Procedure, requires that requests for attorneys' fees be made by motion, which must specify the judgment and the statute, rule or other grounds entitling the movant to recover the fees.   Fed. R. Civ. P. 54(d)(2)(A)-(B).   Here, Defendants

contend that they are entitled to recover attorneys' fees from Plaintiffs, as former members of Lely Resort Golf & Country Club ("Members"), pursuant to the Club Bylaws. The Membership Agreement, which incorporates by reference the Club Bylaws, states that it is governed by Florida law.[6]  *See* Doc. 2-1 at 27-28.

"Federal courts apply state law when ruling on the interpretation of contractual attorney fee provisions." *In re Sure-Snap Corp.*, 983 F.2d 1015, 1017 (11th Cir. 1993). "Florida law allows the recovery of attorneys fees as damages or costs to the prevailing party only when provided for by statute or contract." *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-cv-691-T-30TBM, 2008 WL 2261784, at *1 (M.D. Fla. May 30, 2008). Courts will grant attorneys' fees to a prevailing party pursuant to clear and unambiguous terms of a contract between the parties providing for same. *See, e.g.*, *Overman v. Imico Brickell, LLC*, No. 08-21091-CIV, 2009 WL 68826, at *3 (S.D. Fla. Jan. 6, 2009) (finding that, under contract governed by Florida law, "since the defendant was the prevailing party in this case, and pursuant to the clear and unambiguous terms of the contract between the parties, defendant is entitled to its attorneys' fees").

Where the language relied upon is ambiguous, however, courts construe the provision against the drafting party. *City of Homestead v. Johnson,* 760 So.2d 80, 84 (Fla.2000) ("An ambiguous term in a contract is to be construed against the drafter."); *see also Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1247-48

---

[6] The Membership Agreement specifically states that the Member "agrees to conform to and abide by said ByLaws and Rules and Regulations as each are currently written and as may be amended from time to time."  Doc 2-1 at 28.

(11th Cir. 2002) (citing Florida state court cases); *LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1332 (M.D. Fla. 2012) (explaining that the Court will apply the plain meaning of a contract, but will construe ambiguous language against the drafting party) (citing *Langford v. Paravant, Inc.*, 912 So.2d 359, 360-61 (Fla. 5th DCA 2005)).    "Under Florida law, 'a phrase in a contract is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one.'"   *Norfolk Southern Ry. Co. v. Florida East Coast Ry., LLC*, No. 3:13-cv-576-J-34JRK, 2014 WL 757942, at *8 n.12 (M.D. Fla. Feb. 26, 2014) (quoting *Solymar Inv., Ltd. v. Banco Santander, S.A.*, 672 F.3d 981, 991 (11th Cir. 2012)).   Courts may rely upon rules of construction, such as the rule that the plain meaning of particular terms may be ascertained by reference to other closely associated words in the agreement and the rule requiring courts to read provisions of a contract harmoniously in order to give effect to the entire contract, when interpreting a particular contractual provision.   *See City of Homestead*, 760 So.2d at 84 (applying rules to interpretation of provision in territorial agreement for electric service).

The language of attorneys' fees provisions in contracts must be strictly construed.   *See Gibbs Constr. Co. et al. v. S. L. Page Corp.*, 755 So.2d 787, 790-91 (Fla. 2d DCA 2000) ("Contractual attorney's fee provisions must be strictly construed."); *B&H Constr. & Supply Co., Inc. v. Dist. Bd. of Trustees*, 542 So.2d 382, 387 (Fla. 1st DCA 1989) ("The right to contractual attorney's fees is limited by the terms of the provision, and should be strictly construed.") (internal citation omitted); *Baker Protective Servs. v. FP Inc. et al.*, 659 So.2d 1120, 1122 (Fla. 3d DCA 1995)

("[T]he question of entitlement to attorney's fees is controlled by the plain meaning of the language in the contract."), *rev. den.*, 669 So.2d 250 (Fla. 1996), *disapproved of on other grounds by Scottsdale Ins. Co. v. DeSalvo*, 748 So.2d 941 (Fla. 1999); *see also In re Hallmark Builders, Inc.*, 67 B.R. 63, 65 (Bankr. M.D. Fla. 1986) ("Absent a clear statement awarding attorney's fees in the contract, no attorney's fee shall be awarded.").

Section 11.9 of the Club Bylaws, the contractual provision Defendants contend entitles them to recover attorneys' fees in this matter, states:

> 11.9 Recovery of Damage or Dues.   If the Club is required to turn a Member's account over to a collection agency or institute legal action to collect any dues or charges owed by a Member, or to enforce any provision of these Bylaws against a Member, the Member agrees he or she shall be responsible for all costs of collection, reasonable attorneys' fees incurred by the Club, and court costs.

Upon reviewing the language of section 11.9, it appears that the Bylaws contemplate three circumstances in which a Member will be responsible for attorneys' fees: (1) when the Club must turn over a Member's account to a collection agency; (2) when the Club institutes legal action against a Member to collect monies owed to the Club; and (3) to enforce the Bylaws against a Member.   The only provision of section 11.9 potentially applicable here is the third, the enforcement provision, which Defendants cite as the basis for their entitlement to attorneys' fees in this case.

Defendants' position is that the portion of section 11.9 discussing when the club is required to enforce the Bylaws against a member "is clearly meant to encompass any situation in which Defendants are forced to litigate over the provisions of the By-Laws." Doc. 121 at 3.   Defendants argue that because

Plaintiffs brought suit under the Bylaws and the Court found in Defendants' favor, Plaintiffs are bound by section 11.9 to be liable for Defendants' attorneys' fees.   Put another way, Defendants assert that "in defending against the Plaintiffs' allegations concerning resignation and refunds, the Defendants were necessarily enforcing a material provision of the Club By-Laws governing refunds and resignation."   Doc. 121 at 4.

Defendants cite a single case in support of their entitlement to attorneys' fees, *Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268, 1270 (11th Cir. 2000), for the broad proposition that "[a] party is entitled to attorneys' fees if the relevant contract so provides."   Doc. 121 at 3.   The particular portion of the case cited by Defendants discussed whether a party's failure to affirmatively plead entitlement to attorneys' fees deprived the Court of subject matter jurisdiction to decide a motion for attorneys' fees.   The Court determined that it did not.   Elsewhere in the opinion, the Court described the basis for the request in the context of timeliness:

> To understand Capital Asset's argument, it is appropriate to recall that Finnegan successfully defended the breach of contract claims asserted by Capital Asset during the 1997 bench trial.   Finnegan's entitlement to attorneys' fees is based upon a contractual provision that provides in substance that in any lawsuit brought to enforce the contract, the prevailing party, either plaintiff or defendant, would be entitled to attorneys' fees.

*Capital Asset Research Corp.*, 216 F.3d at 1271.

While at first glance *Capital Asset* would seem to support Defendants' contention that attorneys' fees are awardable for defending an action based upon the

Eleventh Circuit's summary of the fee provision,[7] the language of Section 11.9 of the Bylaws is distinguishable.   The *Capital Asset* language suggests that in *any* lawsuit brought to enforce the contract the prevailing party can recover fees, while Section 11.9 of the Club Bylaws applies only when the Club is required to enforce the Bylaws. The particular language of the entire provision suggests that it applies when the Club is required to take some affirmative step, whether by turning over a Member's account to collection or instituting legal action to collect monies owed.

The Bylaws do not contain a definition of what is contemplated by the word "enforce."   Although not binding on this Court, other courts have discussed what it means to "enforce" a contract.   In *Housing Auth. of Champaign Cnty. v. Lyles*, 918 N.E.2d 1276 (Ill. App. Ct. 2009), the Appellate Court of Illinois determined that the tenant was not entitled to recover attorney fees pursuant to the lease because she was merely defending against a claim that she breached the lease agreement.   The relevant lease provision stated:

> In the event one party to this lease defaults in fulfilling any of the provisions of this lease, the non[ ]defaulting party may recover all costs and reasonable attorney[ ] fees incurred in enforcing this lease, whether or not suit shall be required.

*Id.* at 1279 (alterations in original).   The Court then considered the definition of "enforce" and determined that merely defending against an action brought by another was not contemplated.   It stated:

---

[7] Notably, the precise language of the contractual provision at issue in *Capital Asset* is not featured in the opinion, and nowhere does the Court discuss what it means to "enforce" the contract.

The American Heritage Dictionary defines "enforce" as "1. To compel observance of or obedience to.   2. To compel.   3. To give force to; reinforce."   American Heritage Dictionary 610 (3rd ed. 1992).   Black's Law Dictionary defines "enforce" to mean, "To put into execution; to cause to take effect; to make effective; as, to enforce a particular law, a writ, a judgment, or the collection of a debt or fine; to compel obedience to."   Black's Law Dictionary 528 (6th ed. 1990).

Applying these common definitions to the language of the lease, this court finds as a matter of law that the lessor or lessee would be entitled to attorney fees only if that party was suing to compel or make effective the covenants of the lease.   In this case, defendant was defending against plaintiff's claim that she breached the terms of the lease "as a result of keeping her unit in an unsanitary and unsafe condition."   Defendant never sued to enforce any covenant of the lease.   Defendant was not enforcing anything, but merely defending against the charge that she had breached the lease.   We will not "torture ordinary words until they confess to ambiguity."

*Lyles*, 918 N.E.2d at 1279.

In *Bank of America, N.A. v. Oberman, Tivoli & Pickert, Inc.*, the defendant relied upon the *Lyles* case to argue that the plaintiff was not entitled to recover attorney's fees pursuant to a loan agreement because the plaintiff did not initiate the underlying litigation.   --- F.Supp.2d ---, 2014 WL 293662, at *6 (N.D. Ill. Jan. 22, 2014).   The relevant provision in that agreement stated that the customer should reimburse expenses, including attorneys' fees, incurred "in connection with the preparation, execution, administration, collection, enforcement, protection, waiver or amendment" of the agreement and other documents.   *Id.* at *1.   The court disagreed, explaining that:

The key distinction between the *Lyles* and the present case is that the attorneys' fees provision in the Loan Agreement

> does not limit [Bank of America's] recovery to costs
> incurred in "enforcing" the contract.

*Id.* at \*6.   The court then concluded that the loan agreement did not preclude

recovery of attorneys' fees for defending against suits.   *Id.*

Similar to the Illinois court's decision in *Lyles*, a Utah court held that a party

was not entitled to recover attorneys' fees pursuant to a provision in an earnest

money agreement where that party merely successfully defended an action.   In *Carr

v. Enoch Smith Co.*, a purchaser who brought an action for specific performance of a

land purchase contract appealed the trial court's dismissal of the case and award of

attorneys' fees to the home vendor.   781 P.2d 1292 (Utah Ct. App. 1989).   The Utah

Court of Appeals, applying the same principles that guide Florida courts,[8] reversed

the attorney fee award, finding that the relevant contract provision did not authorize

recovery of such fees for defense of an action.   Specifically, that court held:

> The provision in the earnest money agreement regarding
> attorney fees is not comprehensive but is somewhat limited
> in scope.   With our emphasis, it provided: "if either party
> fails [to perform], he agrees to pay all expenses of *enforcing
> this agreement*, or of any right arising out of the breach
> thereof, including a reasonable attorney's fee."   Smith
> took an entirely defensive posture.   It was not enforcing
> any right arising under the agreement or arising from a
> breach thereof.   On the contrary, its position at trial was
> that there was no viable contract left to enforce.   While
> Smith would surely be entitled to attorney fees under the
> more typical provision awarding fees to the prevailing
> party, it is not entitled to attorney fees under the provision
> at issue.

---

[8] The *Carr* decision cites Utah cases standing for the propositions that "[t]he general rule in Utah is that attorney fees cannot be recovered absent statutory authorization or contract" and "where a contract provides for attorney fees, they are awardable only on the terms and to the extent authorized in the contract."   781 P.2d at 1296.

*Id.* at 1296.

In *Ellipso, Inc. v. Mann*, the United States District Court for the District of Columbia considered whether a lender was entitled to recover attorneys' fees pursuant to a loan agreement.   594 F.Supp.2d 40 (D.D.C. 2009).   The relevant provision of the loan agreement stated:

> [I]n the event this Loan Agreement shall be successfully enforced by suit or otherwise, Borrower will reimburse the Lender or holder or holders of the Obligations, upon demand, for all reasonable expenses incurred in connection therewith, including, without limitation, reasonable attorneys' fees and expenses.

*Id.* at 45 (alteration in original).   That court recognized the potential for ambiguity as to the meaning of "enforcement":

> Of course, there is some question as to whether Mann Tech "successfully enforced" the Loan Agreement since it did not file suit on the basis of the loan agreement (it was the defendant in this case), and it did not prevail on its counterclaims.

*Id.*   The court found that the contract contemplated recovery of attorneys' fees in a case where it was required to merely defend its rights by inclusion of the language "successfully enforced by suit *or otherwise*."   *Id.* (emphasis in original).

The particular language here is also unlike that featured in other agreements, which expressly provide for the recovery of attorneys' fees to the prevailing party in an action brought by either party to enforce its rights under the agreement.   An example of such contracts are the billing services agreements that formed the basis for both parties' requests for appellate attorneys' fees in *Brevard Orthopaedic, Spine & Pain Clinics, Inc. v. Health First Med. Mgmt., Inc.*, 130 So.3d 274 (Fla. 5th DCA

2014).   The agreements in that case stated: "If legal action is commenced by *any party to enforce or defend* its rights under this Agreement, the prevailing party in such action shall be entitled to recover its costs and reasonable attorney fees in addition to any other relief granted."   *Id.* at 274 (emphasis added).   Similarly, a provision in a general contract between a school board and general contractor provided for the Board's recovery of attorneys' fees when incurred instituting or defending against an action.   Specifically, that provision stated:

> 7.3.1   Attorney's Fees:   If Board is required to *institute or defend* any legal proceedings in connection with this Contract due to Contractor's default, Contractor agrees to pay the cost thereof together with reasonable attorney's fees for Board's attorney, if the cause is determined in favor of the Board.

*Gibbs Constr. Co.*, 755 So.2d at 789-90 (emphasis added).

Applying the plain meaning of "enforce," the Bylaws, as written, do not clearly and unambiguously provide for entitlement to attorneys' fees where, as here, the Club is required to *defend* against another party's attempt to enforce the Bylaws against the Club.   As the Utah court noted in *Carr*, Defendants would be entitled to recover fees under an attorneys' fees provision using more standard language; the Club could have included in Section 11.9 broader language clearly entitling it to recover attorneys' fees in a situation such as it now faces, but it did not.   Instead, the language of the Bylaws most closely resembles the language of the earnest money agreement in *Carr* or the lease agreement in *Housing Auth. of Champaign Cnty.*, which were found not to encompass recovery of fees for merely defending an action. Although the court in the *Ellipso, Inc.* case recognized the ambiguity of the

enforcement language in the attorneys' fees provision and determined that fees were awardable merely for defending, the disparate treatment by various courts only highlights that such language is subject to varying interpretation.   Accordingly, the Court finds that the language of Section 11.9 "may be fairly understood in more ways than one," *Norfolk Southern Ry. Co.*, 2014 WL 757942, at *8 n.12, and, as the party responsible for drafting the Bylaws, Florida law requires that the ambiguity be construed against the Club.   *City of Homestead v. Johnson,* 760 So.2d at 84.

Also noteworthy is that Section 11.9 is entitled "Recovery of Damage or Dues" and obligates Members to be "responsible for all costs of collection, reasonable attorneys' fees incurred by the Club, and court costs," written in the conjunctive. Read together in accordance with the rules of construction and interpretation that enable courts to discern the plain meaning of a word or provision by reference to other closely associated words in the agreement and to read provisions of a contract harmoniously, *City of Homestead*, 760 So.2d at 84, the Court finds that Section 11.9 appears to apply only in situations in which the Club is required to take an affirmative role to recover for damage or to recover dues owed, such as *instituting* legal action to recover damage or dues or turning an account over to collections, and not where, as here, the Club merely defended against another party's attempt to seek redress pursuant to a different portion of the Bylaws.

Interpreting Section 11.9 to apply only in instances where the Club takes action to recover for damages or dues also is consistent with Florida courts' interpretations of contracts, when read as a whole and taking into consideration the

context of the particular language in the provision.  For example, in *Bruce v. Barcomb*, 675 So.2d 219 (Fla. 2d DCA 1996), a Florida trial court denied defendants' request for attorney's fees, finding that defendants had not pled a claim for attorneys' fees and that there was no basis for such an award.  The appellate court affirmed the denial, finding that defendants were not entitled to attorneys' fees after the plaintiffs voluntarily dismissed their complaint because the fee provisions in the relevant agreements applied only in the arbitration context.  At issue in that case were two agreements, a Shareholders Agreement and a Beneficiary Agreement, containing prevailing party entitlement to attorneys' fees provisions.  Section 7.5 of the Shareholders Agreement, entitled "Arbitration," stated:

> 7.5  *Arbitration*.  Any controversy or claim arising out of, or relating to this agreement, or any breach thereof, shall be settled by binding arbitration in Sarasota County, Florida, in accordance with the then current rules of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. the (sic) prevailing party shall be entitled to expenses including a reasonable attorney's fee whether same be rendered for negotiation, arbitration, trial or appellate proceedings.

*Bruce*, 675 So.2d at 221.  Paragraph 16 of the Beneficiary Agreement, which is untitled, contained a nearly-identical prevailing party provision for attorneys' fees. *See id.* at 221-22.  The Second DCA stated that it "view[ed] the contractual language as relating solely to maters being arbitrated.  The word that would compel some to disagree is 'trial.'"  *Id.* at 222.  The court explained that its interpretation was guided by "the established rule that, '[t]he legal effect of a contract must be determined from the words of the entire contract'" and that, "'[i]n reviewing the

contract in an attempt to determine its true meaning, the court must review the entire contract without fragmenting any segment or portion.'"   *Id.* (quoting *Hoffman v. Robinson*, 213 So.2d 267, 268 (Fla. 3d DCA 1968) and *J.C. Penney Co. v. Koff*, 345 So.2d 732, 735 (Fla. 4th DCA 1977)).   Thus, the court stated "[i]n viewing the applicable language in its entirety, we are compelled to reach the conclusion that attorney's fees would only be awardable in an arbitration context."   *Bruce*, 675 So.2d at 222.   The same reasoning can be applied in the present case, where the relevant provision suggests it applies only to the recovery for damages or of Member dues in an action instituted by the Club.

Because Section 11.9 does not clearly and unambiguously entitle Defendants to recover attorneys' fees in this matter, and reading the language of Section 11.9 as a whole, the Court concludes that it does not apply where, as here, the Club was required to defend against a suit by former members seeking to enforce a different provision of the Bylaws, and the Club did not counterclaim or take other affirmative action.   Just as "Courts will not rewrite unambiguous contracts to make them more advantageous for one of the parties or to 'relieve one of the parties from the apparent hardship of an improvident bargain,'" neither will the Court rewrite the terms of an ambiguous contract to achieve those results.   *S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Florida, Inc.*, 365 Fed. Appx. 202, 207 (11th Cir. 2010) (quoting *Home Dev. Co. of St. Petersburg, Inc. v. Bursani*, 178 So.2d 113, 117 (Fla. 1965)).   Instead, Florida law requires the ambiguity of an agreement to be construed against

the drafter.   Accordingly, the Court respectfully recommends that Defendants'
request for attorneys' fees be denied.

>    *b.  Costs*

Defendants, as the prevailing party in this matter, may seek an award of costs
pursuant to Rule 54, Federal Rules of Civil Procedure, and Middle District of Florida
Local Rule 4.18.    *See Lookout Mountain Wild Animal Park, Inc. v. Stearns Zoological
Rescue & Rehab Ctr., Inc.*, No. 8:09-cv-02301-T-30, 2014 WL 3396503, at *1 (M.D.
Fla. July 11, 2014).   Rule 54(d)(1) provides that "[u]nless a federal statute, these
rules, or a court order provides otherwise, costs—other than attorney's fees—should
be allowed to the prevailing party."   Fed. R. Civ. P. 54(d)(1).   Defendants represent
that they incurred costs in the amount of $10,223.74 defending this action in the
district court[9] and request that the Court tax those costs against Plaintiffs.   Doc.
121 at 3.   Defendants have provided an Affidavit from counsel identifying the costs
that were incurred.   Doc. 121 at 7-9.

"[Title 28 U.S.C.] Section 1920 enumerates expenses that a federal court may
tax as a cost under the discretionary authority found in Rule 54(d)."   *Crawford
Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).   Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the
> following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily
> obtained for use in the case;

---

[9] Defendants expressly note that the $10,223.74 excludes costs incurred defending
against Plaintiffs' appeal.   *See* Doc. 121 at 3 n.1.

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title [28 U.S.C. § 1923]; [and]

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 U.S.C. § 1828].

28 U.S.C. § 1920.

When determining whether taxation of costs is appropriate, the Court is bound by the limits set forth in Section 1920.   *See Crawford*, 482 U.S. at 445; *see also Pelc v. Nowak*, No. 8:11-cv-79-T-17TGW, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013) ("The Court has limited discretion in awarding costs, and is permitted to tax only those items specified in Sec[.] 1920, unless authorized by statute.") (citing *Crawford*, 482 U.S. at 441-42); *Family Oriented Cmty. United Strong, Inc. v. Lockheed Martin Corp.*, No. 8:11-cv-217-T-30AEP, 2012 WL 6575348, at *1 (M.D. Fla. Dec. 17, 2012) ("Absent explicit statutory or contractual authorization, the Court is limited to those costs specifically enumerated in § 1920.").   Although courts retain the discretion to deny costs to a prevailing party, "[t]he presumption is in favor of awarding costs." *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001).   "To defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so."   *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2006).

The burden of proving entitlement to costs and the amount of compensable

expenses lies with the party seeking to tax those costs. *Loranger v. Stierham*, 10 F.3d 776, 784 (11th Cir. 1994); *Brivik v. Murray*, No. 8:11-cv-2101-T-33TGW, at *4 (M.D. Fla. Apr. 18, 2014) ("The party seeking an award of costs or expenses bears the burden of submitting a request that enables a court to determine what costs or expenses were incurred by the party and the party's entitlement to an award of those costs or expenses.") (citing *Loranger*, 10 F.3d at 784). "The party seeking costs must not only show that the costs claimed are recoverable, but must also provide sufficient detail and sufficient documentation regarding those costs in order to permit challenges by opposing counsel and meaningful review by the court." *Pelc*, 2013 WL 3771233, at *5; *Lookout Mountain*, 2014 WL 3396503, at *2 ("To recover compensable costs under 28 U.S.C. § 1920, the prevailing party must adequately describe and document those costs.") (citing *Scelta v. Delicatessen Support Servs., Inc.*, 203 F.Supp.2d 1328, 1340 (M.D. Fla. 2002)); *Shave v. Stanford Fin. Grp., Inc.*, No. 07-60749-CIV, 2008 WL 3200705, at *4 (S.D. Fla. Aug. 6, 2008) ("The party seeking costs bears the burden of submitting a request for expenses that enables the court to determine what expenses were incurred and whether those expenses meet the proof of necessity and reasonableness under 28 U.S.C. [§] 1920."). Failure to provide supporting documentation can be grounds for denying costs. *Pelc*, 2013 WL 3771233, at *5.

i. Fees of the clerk

Defendants seek to recover the $350.00 filing fee charged by the Middle District of Florida. Doc. 121 at 8, 10. Filing fees, as fees of the Clerk, are taxable

under 28 U.S.C. § 1920. *See Lookout Mountain*, 2014 WL 3396503, at *1 (finding the $350 fee for the Clerk taxable under section 1920); *Family Oriented Cmty. United Strong, Inc.*, 2012 WL 6575348, at *1 (taxing filing fees as fees of the Clerk); *Pacific Food Solutions, LLC v. G H Intern., Inc.*, No. 6:14-cv-327-Orl-41GJK, 2014 WL 3747345, at *4 (M.D. Fla. July 29, 2014) (finding a $400 filing fee reasonable and taxable). The Court therefore recommends that $350.00 be taxed against Plaintiffs as fees of the Clerk.

ii.   Fees for transcripts necessarily obtained

Defendants seek a total of $8,387.05 for deposition transcripts in this case. Specifically, they seek $1,286.05 for the deposition transcript of Margaret Gadsby, $1,426.50 for the deposition transcript of Frank Murphy, $1,396.70 for the deposition transcripts of James Taylor and John Gardiner, Sr., $383.25 for the deposition transcript of Pat Maher, $1,229.65 for the deposition transcripts of Donald Oinonen and Jody Taylor, $251.00 for the deposition transcript of Richard Brussard, $724.70 for the deposition transcript of Jerome Kutche, $595.80 for the deposition transcript of Bonnie Stomgren, $220.20 and $448.70 for the deposition transcripts of Gary Rogers and $424.50 for the deposition transcript of Cheryl James. Doc. 121 at 8.

Nine of the deposition transcripts and related expenses for which Defendants request taxation of costs are from the depositions of named Plaintiffs in this case, totaling $6,910.40.[10] The Eleventh Circuit has explained that courts may tax costs

---

[10] Eight are named individual Plaintiffs: Margaret Gadsby, Frank Murphy, James Taylor, John Gardiner, Sr., Donald Oinonen, Jody Taylor, Richard Brussard and Jerome Kutche. *See* Doc. 121 at 8. The ninth, Bonnie Stomgren, was deposed as the corporate

for the depositions of parties, but stated that courts should "look to whether the depositions were reasonably necessary" when determining whether to tax such costs against the non-prevailing party. *EEOC v. W&O, Inc.*, 213 F.3d 600, 622 (11th Cir. 2000). Where deposition costs were incurred merely for convenience or to aid in thorough investigation or preparation, however, they are not recoverable. *Id.* at 620.

The Eleventh Circuit upheld the taxation of costs for the depositions of parties when the deposition testimony was used at trial or to support summary judgment. *See, e.g., id.* at 621 ("A district court may tax costs associated with the depositions submitted by the parties in support of their summary judgment motions."); *Watson v. Lake Cnty.*, 492 Fed. Appx. 991, 996 (11th Cir. 2012) ("[U]se of a deposition at trial or in a summary judgment motion tends to show that the deposition was necessarily obtained for use in a case . . . ."); *Family Oriented Cmty. United Strong, Inc.*, 2012 WL 6575348, at *1 (finding deposition costs associated with summary judgment are recoverable); *Lookout Mountain*, 2014 WL 3396503, at *1 (taxing costs for depositions read into evidence at trial). Here, excerpts of the depositions of the named Plaintiffs were offered by Defendants in support of their motion for summary judgment and the transcript of the summary judgment hearing also indicates that Defendants relied on information obtained during Plaintiffs' depositions to support the motion for summary judgment. *See* Docs. 44, 45; Doc. 104 at 9. Accordingly, the Court finds that costs for the depositions of the named Plaintiffs are taxable against Plaintiffs in this matter. *See EEOC v. W&O, Inc.*, 213 F.3d at 621; *Haughton v. SunTrust Bank,*

---

representative of named Plaintiff Hospital Boutiques. *See* Doc. 45-3 at 1-2.

*Inc.*, 403 Fed. Appx. 458, 460 (11th Cir. 2010) (finding the district court's award of costs for depositions the defendant relied upon for the summary judgment motion was proper).

Not all expenses sought by Defendants in this case related to the depositions of Plaintiffs are taxable, however.  For example, the Eleventh Circuit held that a district court abused its discretion by taxing costs for shipment of deposition transcripts because Section 1920 does not authorize recovery of that expense. *Watson*, 492 Fed. Appx. at 997 (citing *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996)); *see also Kobie v. Fithian*, No. 2:12-cv-98-FtM-29DNF, 2014 WL 2215752, at *2 (M.D. Fla. May 28, 2014) ("It is well settled that costs for 'shipping and handling' or postage costs are not recoverable expenses under § 1920.").  Here, included in the costs of eight of the Plaintiffs' depositions that Defendants seek to recover is $23.00 per package containing deposition transcripts for "shipping & handling."[11]   *See* Doc. 121 at 13, 14, 15, 17, 19 and 20.  Accordingly, because shipping fees are not recoverable pursuant to Section 1920, the total amount Plaintiffs seek to recover should be reduced by $23.00 per package for the depositions of eight of the named Plaintiffs, for a total reduction of $138.00.[12]   The Court

---

[11]  An invoice for the deposition of Richard Brussard does not reflect fees for a copy of the transcript or shipping.   *See id.* at 18.

[12]  Although the invoices provided by Defendants indicate a shipping and handling fee of $23.00 per package, it appears that multiple deposition transcripts were sometimes shipped in a single package.   *See, e.g.*, Doc. 121 at 15 (invoice reflecting only one $23.00 fee and one package for the depositions of James Taylor and J. Gardiner, Sr.); *id.* at 17 (invoice reflecting only one $23.00 fee and one package for the depositions of Donald Oinonen and Jody Taylor).

therefore finds the total amount taxable against Plaintiffs for the nine named Plaintiffs' depositions to be $6,772.40.

As to the remaining deposition transcripts for which Defendants seek to tax costs, those of Pat Maher, Gary Rogers and Cheryl James, Defendants have not provided any explanation as to why taking each of those depositions was necessary.[13] Where, as here, the party seeking to tax costs does not provide documentation regarding the relevance or significance of the deposition transcripts, the Court cannot adequately determine whether the transcripts were necessarily obtained for use in the case or merely for convenience, or investigation or preparation. *See EEOC v. W&O, Inc.*, 213 F.3d at 622; *Lookout Mountain*, 2014 WL 3396503, at *2. Accordingly, the Court recommends that costs for these depositions and transcripts not be taxed against Plaintiffs.

### iii.   Fees for copies and printing

Defendants request that the Court tax costs in the amount of $27.00 for "Copies – Clerk of the Court"; $15.27 for "West Law & Copies"; $69.65 for "Pacer, Copies & FedEx"; and $105.10 for "Copies & Westlaw."   Doc. 121 at 8.

Where a party seeks to tax costs for copies and/or printing, it is the burden of the party seeking to recover the costs to provide adequate documentation and description to enable the Court to determine whether such copies were necessary and therefore compensable under Section 1920.   *See EEOC v. W&O, Inc.*, 213 F.3d at 623

---

[13] The Court notes that the deposition transcripts of Gary Rogers and Cheryl James were offered by *Plaintiffs* in support of their opposition to summary judgment.   *See* Docs. 53, 54, 56, 57.

("In evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue."); *Lookout Mountain*, 2014 WL 3396503, at *2, *3 (denying fees for printing and copies where moving party failed to provide documentation showing they were necessarily obtained for use in the case).   The moving party need not show that the documents were used at trial or that the copies were entered into evidence to establish that the copies were necessary.   *See Watson*, 492 Fed. Appx. at 997 ("Actual use of the information contained in the document copied is not a prerequisite to finding that it was necessary to copy the document."); *Reliable Salvage & Towing, Inc. v. Gunter*, No. 2:06-cv-534-FtM-34SPC, 2007 WL 4557140, at *1 (M.D. Fla. Dec. 21, 2007) ("To establish necessity, the prevailing party need not show that the documents were introduced into evidence or submitted to the court.") (citing *EEOC v. W&O, Inc.*, 213 F.3d at 623).   Although Defendants have included invoices in their Renewed Motion, those documents do not provide sufficient information to enable the Court to determine whether any of the copies were necessarily obtained.   Accordingly, the Court recommends that all fees for "copies" be denied.

To the extent that Defendants seek to tax costs for Pacer or Westlaw fees, parties are generally not entitled to recover costs for computer assisted legal research. *See Duckworth*, 97 F.3d at 1399 ("Plaintiff's affidavits appear to include costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees, which are clearly nonrecoverable."); *Pelc*, 2013 WL 3771233, at *6 (reducing award of costs because charges for Westlaw, Pacer, FedEx and

telephone are not recoverable under Section 1920).   *See also Shave v. Stanford Fin. Grp., Inc.*, 2008 WL 3200705, at *5 ("Several of the items are for computerized research. That is generally not a permissible cost.") (citing *Duckworth*, 97 F.3d at 1399).   Defendants have not shown why the Court should depart from the general practice and award fees in this case.   Moreover, the Court finds that Defendants have not provided adequate information for the Court to determine that such fees and costs were necessarily incurred, and the documents necessarily obtained. Accordingly, the Court recommends that Defendants' request to tax costs for computer assisted research be denied.

iv.  Other costs

Defendants seek to recover costs in the amount of $268.39 for "Production – Credence Corp."   Doc. 121 at 8.   The related invoice provides the following description of these costs:   "Scan documents (B/w Ltr/Lgl)," "Bates Labeled Images," "OCR" and "Electronic File Delivery."   Doc. 121 at 12.   Other courts, including courts within this district, have found that costs associated with bates numbering extend beyond the scope of "copying," as contemplated by Section 1920, or are merely for parties' convenience.   *See Durden v. Citicorp Trust Bank, FSB*, No. 3:07-cv-974-J-34JRK, 2010 WL 2105921, at *4 (M.D. Fla. Apr. 26, 2010) ("Defendant not only seeks copying costs, but also seeks binder costs, labeling costs, and costs for bates numbering documents.   The Court finds these extraneous costs to extend beyond the scope of copying, and thus to be non-taxable; alternatively, the Court finds these costs to be born primarily of convenience, and not necessity."); *Aguiar v. Natbony et al.*, No.

09-60683-CIV, 2011 WL 4387180, at *2 (S.D. Fla. Sept. 20, 2011) ("[T]he cost of Bates labeling is not expressly recoverable under § 1920(4).   Because Bates labeling is done for the convenience of the parties, it is not a recoverable cost under § 1920.").

As to all $268.39 worth of costs featured in the relevant invoice, the Court finds that Defendants have not provided sufficient information to determine whether the costs were reasonably incurred and the services necessarily obtained, or were merely for convenience.   Accordingly, the Court recommends that Defendants' request to tax these costs be denied.   *See Powell v. The Home Depot, U.S.A., Inc.*, No. 07-80435-CIV, 2010 WL 4116488, at *19-20 (S.D. Fla. Sept. 14, 2010) (declining to award costs associated with electronic copying where "invoices contain[ed] descriptions such as 'scan,' 'OCR,' 'file folder capture,' 'image capture,' 'color scanned into Email,' 'scanned documents,' 'color scanning,' 'electronic stamp,' and 'scan color'" because Plaintiff "failed to meet its burden of showing that any of the electronic copies were necessarily obtained for use in the case, rather than the mere convenience of counsel."); *see also EEOC v. W&O, Inc.*, 213 F.3d at 623.

Finally, Defendants also seek to tax costs of mediation to Plaintiffs in the amount of $743.75.   Doc. 121 at 8, 21.   Mediation costs are not expressly provided for in Section 1920 and therefore are not recoverable pursuant to that statute.   *Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 Fed. Appx. 837, 846 (11th Cir. 2008) (stating that mediation expenses are not recoverable under 28 U.S.C. § 1920); *Kobie*, 2014 WL 2215752, at *2 ("Rule 54(d) and § 1920 do not provide any means to recover mediation fees."); *Lookout Mountain*, 2014 WL 3396503, at *3 ("Mediation costs are

not listed under 28 U.S.C. § 1920, and are not compensable."). The Court therefore recommends that Defendants' request to tax the costs of mediation against Plaintiffs be denied.

### III.   Conclusion

As written, section 11.9 of the Club Bylaws does not clearly and unambiguously entitle Defendants to recover their attorneys' fees. As the prevailing party in this matter, however, Defendants are entitled to recover certain costs. Although Defendants contend that a total of $10,223.74 should be taxed against Plaintiffs in this case, the Court finds that only $7,122.40 of the costs identified by Defendants, representing $350.00 for the filing fee and $6,772.40 for the costs of Plaintiffs' depositions and transcripts, are costs taxable to Plaintiffs.

### Defendants' Motion for Leave to Reply/Motion to Strike

Also pending before the Court is Defendants' Motion for Leave to File a Reply to Plaintiffs' Response in Opposition to Defendants' Renewed Motion for Costs and Entitlement to Attorneys' Fees (Doc. 125), filed on August 6, 2014. Plaintiffs failed to file a response to the motion. Defendants seek leave to file a reply or, in the alternative, request that the Court strike Plaintiffs' untimely response to Defendants' motion for attorneys' fees and costs. Upon consideration, the motion is due to be granted in part and denied in part.

"The purpose of a reply brief is to rebut any new law or facts contained in the opposition's response to a request for relief before the Court," *Tardif v. People for Ethical Treatment of Animals*, No. 2:09-cv-537-FtM-29SPC, 2011 WL 2729145, at *2

(M.D. Fla. July 13, 2011).   Moreover, the Court will not grant leave to file a reply brief unless the reply will benefit the Court's resolution of the pending motion.   *See Schumann v. Collier Anesthesia, P.A.*, No. 2:12-cv-347-FtM-29CM, 2014 WL 1230644, at *4 n.3 (M.D. Fla. Mar. 25, 2014) (denying leave to file a reply brief where such brief would not aid the Court's resolution of the underlying motion).   Because the Court does not believe that further briefing will aid its resolution of the underlying motion, a reply is not warranted in this case.

The Court finds good cause to grant Defendants' requested alternative relief. Defendants filed their Renewed Motion for Costs and Entitlement to Attorneys' Fees on March 19, 2014 (Doc. 121).   Plaintiffs filed a Response in Opposition to Defendants' Renewed Motion for Costs and Entitlement to Attorneys' Fees on July 16, 2014 (Doc. 124), nearly three and a half months late and without seeking leave of Court before doing so.   The Court will therefore strike Plaintiffs' untimely response.

ACCORDINGLY, it is respectfully

**ORDERED:**

1.   Defendants' Motion for Leave to File a Reply to Plaintiffs' Response in Opposition to Defendants' Renewed Motion for Costs and Entitlement to Attorneys' Fees (Doc. 125) is **GRANTED in part and DENIED in part**.   As to Defendants' request to file a reply brief, the motion is denied.   As to Defendants' request that the Court strike Plaintiffs' untimely response to Defendants' renewed motion for attorney's fees and costs, the motion is granted.

2.      Plaintiffs' Response in Opposition to Defendants' Renewed Motion for Costs and Entitlement to Attorneys' Fees (Doc. 124) is **STRICKEN**.   The Clerk is directed to remove it from the docket.

**RECOMMENDED:**

3.      That Defendants' Renewed Motion for Costs and Entitlement to Attorneys' Fees (Doc. 121) be **GRANTED in part and DENIED in part** as set forth herein.

4.      That the Court direct the Clerk to enter judgment in favor of Defendants and against Plaintiffs for taxable costs in the amount of $7,122.40.

**DONE** and **ENTERED** in Fort Myers, Florida on this 8th day of October, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record